**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:26-CV-00015-HBB**

**MARILEE O.**[1] **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
**COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

## I. BACKGROUND

Before the Court is the Complaint (DN ) of Marilee O. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Plaintiff (DN 12) and Defendant (DN 13 ) have filed a Fact and Law Summary. Plaintiff has also filed a reply (DN 14). For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered April 7, 2026 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefore was filed and granted. No such request was filed.

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

## II. FINDINGS OF FACT

On January 19, 2024, Plaintiff protectively filed an application for Supplemental Security Income (Tr. 20, 231-39). Plaintiff alleged that she became disabled on August 19, 2021, as a result of sinus tachycardia, dysautonomia, vision problems, arrhythmia, pre-syncope, anxiety, brain fog, back pain, stomach issues, chest pain, headaches, and depression (Tr. 20, 96, 105). The application was denied initially on July 18, 2024, and upon reconsideration on September 12, 2024 (Tr. 20, 95, 104, 117-20, 123-25). On October 23, 2024, Plaintiff filed a written request for hearing (Tr. 20, 137-39).

On April 1, 2025, Administrative Law Judge William C. Zuber ("ALJ") conducted a telephonic hearing (Tr. 20, 38). Plaintiff and her counsel, Ronald Hampton, participated (*Id.*). Jennifer Guediri, an impartial vocational expert, testified during the hearing (*Id.*).

In a decision dated June 4, 2025, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 20-31). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 19, 2024, the alleged onset date (Tr. 22). At the second step, the ALJ determined that Plaintiff has the following severe impairments: autonomic disorder and anxiety disorder (*Id.*). The ALJ also determined that Plaintiff's alleged blurred vision, back pain, and stomach issues are not medically determinable impairments (Tr. 22-23). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 23).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except with the following additional

limitations: she occasionally can climb ramps and stairs; she frequently can stoop, crouch, crawl, and kneel but cannot climb ladders, ropes, or scaffolds; she cannot tolerate any exposure to dangerous machinery or unprotected heights she can understand and remember simple instructions and procedures and handle occasional interactions with coworkers, supervisors, and the public; she can tolerate occasional changes in work routine and environment as well as sustain concentration, persistence, and pace for periods of two hours at a time (Tr. 25). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 29).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 30-31). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 19, 2024, through the date of the decision (Tr. 31).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 229-30). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## III. <u>CONCLUSIONS OF LAW</u>

### A. <u>Standard of Review</u>

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a

reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

**B. The Commissioner's Sequential Evaluation Process**

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. § 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 416.920. In summary, the evaluation proceeds as follows:

> 1) Is the claimant engaged in substantial gainful activity?
>
> 2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?
>
> 3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the RFC to return to his or her past relevant work?
>
> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 416.920(a)(4)(i)-(v). Here, the ALJ denied Plaintiff's claim at the fifth step.

## C. <u>Challenge to Finding No. 2</u>

### ***1. Arguments of the Parties***

Plaintiff challenges Finding No. 2 because she believes the ALJ failed to find that she suffers from familial dysautonomia, heart issues, severe anxiety, back pain, bone pain, as well as other medical issues (DN 12-1 PageID # 829). Plaintiff cites what she believes are pertinent medical records and accuses the ALJ of ignoring important medical opinions concerning her impairments (*Id.* at PageID # 829-30).[2] Plaintiff's reply reiterates her position (DN 14 PageID #

---

2 Specifically, Plaintiff cites records from Vanderbilt Heart V.U.M.C. concerning chronic familial dysautonomia, sinus node tachycardia, and inappropriate sinus tachycardia (citing Tr. 607, 608, 609, 611); the Assessment/Plan section of an October 12, 2023, treatment note of Dr. Venkata Reddy, at TJ Health Pavilion Clinics, mentioning sinus tachycardia, chest pain, arrhythmia, anxiety, hypotension, and other conditions (citing Tr. 492); the Current Medications section of a January 13, 2022, treatment note from Dr. Anthony Carter listing prescribed medications for anxiety and depression (citing Tr. 511); the first two pages of the Psychiatric Review Technique form filed out by state agency psychological consultant Alicia Fedewa, Ph.D. (citing Tr. 98, 99); the Problem History section of a January 31, 2022, treatment note from Dr. Anthony Carter that mentions disc degeneration in spine (citing Tr. 346); and two pages from a September 27, 2023, Cardiology Consultation Report from Dr. Frank Schwender that

857-62).

In response, Defendant asserts that substantial evidence supports the ALJ's findings at step two (DN 13 PageID # 846-51). Defendant points out that once an ALJ "finds a severe impairment at step two, 'the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" (*Id.* at PageID # 846) (quoting *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error")). Defendant also notes that "[t]he regulations do not require the ALJ designate each impairment as 'severe' or 'non-severe.'" (*Id.*) (citing 20 C.F.R. § 416.920(a)(4)).

**2. *Applicable Law***

At step two, the applicable regulation warns, "[i]f you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."[3] 20 C.F.R. § 416.920(a)(4)(ii); *see* Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).[4] To satisfy the "medically determinable" requirement:

> Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to

---

purportedly substantiate a POTS diagnosis (citing Tr. 364-65). Additionally, Plaintiff accuses the ALJ of ignoring a statement from Dr. Anthony Carter about Plaintiff's conditions and limitations (citing Tr. 797-98); a statement from her treating cardiologist Dr. Hariskrishna Tandri, at Vanderbilt University Medical Center, explaining Plaintiff's limitations (citing Tr. 799); and statements from the Psychiatric Review Technique form prepared by state agency psychological consultant Alicia Fedewa, Ph.D. (citing Tr. 99, 100).

3 The duration requirement in 20 C.F.R. § 416.909 specifies an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."

4 The warning is reiterated in 20 C.F.R. § 416.920(c).

establish the existence of an impairment(s).

20 C.F.R. § 416.921. This regulation also states, "[a]fter we establish that you have a medically determinable impairment(s), then we will determine whether your impairment(s) is severe." *Id.* To satisfy the "severe" requirement a claimant must demonstrate her impairment or combination of impairments "significantly limit" her "physical or mental ability to do basic work activities."[5] 20 C.F.R. § 416.922(a).

In the Sixth Circuit the severity regulation codified in 20 C.F.R. § 416.920(c) and 416.921 "has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Stated differently, the severity requirement is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863.

Upon determining that a claimant has at least one severe impairment, an ALJ must continue with the remaining steps in the five-step sequential evaluation process. *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the ALJ should consider both the severe and non-severe

---

5 The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). Examples of basic work activities are as follows:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.922(b).

impairments in the remaining steps. *See Anthony v. Astrue*, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Thus, once a severe impairment is found, the administrative law judge must consider the "*combined effect*" of all the medically determinable severe and non-severe impairments in assessing a claimant's RFC. *See* 20 C.F.R. §§ 416.923(c) (emphasis added), 416.945(a)(2); *Simpson v. Comm'r of Soc. Sec.*, 344 F. Appx. 181, 190-91 (6th Cir. 2009); *White v. Comm'r of Soc. Sec.*, 312 F. Appx. 779, 787 (6th Cir. 2009). These procedural requirements serve to ensure adequacy of review and give the claimant a better understanding of the disposition of her case.

**3. *Discussion***

In addressing Plaintiff's claim, the Court has reviewed the ALJ's decision holistically. *See Martinek v. Comm'r of Soc. Sec.*, No. 1:25-CV-01735-DAC, 2026 WL 1745689, at *7 (N.D. Ohio June 17, 2026) (citation modified) (reading ALJ's decision as a whole and with common sense); *Lisa R. v. O'Malley*, No. 3:23-CV-409-CRS-CHL, 2024 WL 4024506, at *5 (W.D. Ky. Sep. 3, 2024); *Carter v. Comm'r of Soc. Sec.*, No. 5:24-CV-00087-KKC, 2024 WL 5055830, at *3-4 (E.D. Ky. Dec. 10, 2024) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) (reading ALJ's decision holistically or as a whole).

At step two, the ALJ found that Plaintiff has the following medically determinable severe impairments: autonomic disorder and anxiety disorder (Tr. 22). This means Plaintiff satisfied the *de minimis* hurdle at step two and the ALJ must continue with the remaining steps in the five-step sequential evaluation process. *Maziarz*, 837 F.2d at 244. But it also warrants mention that the ALJ announced that Plaintiff's "sinus tachycardia, dysautonomia, arrhythmia, syncope, brain fog, chest pain, and headaches" all fall under the broader category of autonomic disorder and will be

discussed accordingly (Tr. 22). These impairments are discussed in the context of assessing Plaintiff's RFC (Tr. 25-29).

Relatedly, the ALJ found that Plaintiff's "vision problems, back pain, and stomach issues" are not medically determinable impairments (*Id.*). In support of his finding about Plaintiff's back pain, the ALJ explained:

> Meanwhile, the claimant's back pain, while a symptom to be considered, is not itself a medically determinable impairment. There are no imaging reports or clinical signs to support a concrete or severe medically determinable impairment. Rather, 2023 chest imaging confirmed "marginal" endplate osteophytes" in the spine but no follow-up care (Ex. B3F/52). There is otherwise no signs of tenderness to palpation or other spinal dysfunction (Ex. B3F/6). Without more, the undersigned finds no medically determinable impairment.

(Tr. 23).

The ALJ noted that consultative psychological examiner, Sarah Kerrick, Psy.D., diagnosed Plaintiff with "mild depressive disorder" and that the state agency psychological consultants assessed a depressive disorder (Tr. 28). But the ALJ found depression is not a medically determinable impairment because both Dr. Kerrick and the psychological consultants relied too much on Plaintiff's subjective statements and Plaintiff "failed to endorse depressive symptoms to her primary care provider, receive treatment from a mental health specialist, or take medication to address this condition" (Tr. 29). Plaintiff cited a December 1, 2021, treatment note prepared by Dr. Carter that includes amitriptyline 100 mg tablet on the list of Plaintiff's medications (Ex. B6F p. 3, Tr. 511). While this prescription shows up on all of Dr. Carter's treatment notes from December 1, 2021, through July 18, 2024, it is not clear why Dr. Carter prescribed amitriptyline because his treatment notes do not include a diagnosis of depression and they do not indicate

Plaintiff complained about depression (*see* Ex. B3F, Tr. 397-465; Ex. B5F, Tr. 496-508; Ex. B6F, Tr. 515-76; Ex. B8F, Tr. 614-18; Ex. B11F, Tr. 665-744; Ex. B14F, Tr. 762-90).

Relatedly, Plaintiff relies on excerpts from an assessment by the state agency psychological consultant, Alicia Fedewa, Ph.D., to demonstrate she has been diagnosed with bipolar and obsessive-compulsive disorders. What Plaintiff fails to understand is that Dr. Fedewa used listing "12.04 *Depressive, bipolar and related disorders*" and listing "12.06 *Anxiety and obsessive-compulsive disorders*" to assess Plaintiff's claimed impairments of anxiety and depression at steps two and three (Tr. 98-100). Dr. Fedewa did not diagnose Plaintiff with bipolar and obsessive-compulsive disorders.

The above-mentioned findings by the ALJ are supported by substantial evidence in the record and comply with the applicable law discussed above. Consequently, there is no merit to Plaintiff's step two challenge.

## D. <u>Challenge to Finding No. 4</u>

### 1. *Arguments of the Parties*

Plaintiff contends that the ALJ's determination she has the RFC to perform light work is based on several factual errors that ignore the medical record (DN 12-1 PageID # 831). First, Plaintiff takes issue with the ALJ's finding that she was non-compliant and declined a stellate ganglion block because the Vanderbilt medical records confirm she did undergo the procedure (*Id.*) (citing Ex. B10F p. 9). Next, Plaintiff disputes the ALJ's finding that she failed to take medication for depression because Dr. Carter's records document a multi-year history of prescribed antidepressant medication (amitriptyline) (*Id.*) (citing Ex. B6F p. 3). Third, Plaintiff claims the ALJ ignored the diagnoses of familial dysautonomia and inappropriate sinus

tachycardia, the diagnoses of bipolar and obsessive-compulsive disorders (*Id.* at PageID # 832) (citing Exs. B10F p. 10, B7F p. 1, B6A p. 4). Additionally, Plaintiff believes the ALJ improperly rejected the opinions of Drs. Tandri (specialist) and Carter (treating) (*Id.* at PageID # 832-33) (citing Exs. B17F p. 1, B16F pp. 1-2). Plaintiff asserts that the RFC is internally inconsistent because the ALJ acknowledged Plaintiff's fainting risk but found she is capable of light work which requires standing and walking for the majority of the workday (*Id.* at PageID # 833-34). Further, Plaintiff suggests that the RFC failed to include the need for unscheduled breaks or lying down in the hypothetical question to the vocational expert (*Id.* at PageID # 834). Moreover, Plaintiff posits that the ALJ ignored her history of anxiety that is not controlled by medication and Plaintiff's administration of daily medication (*Id.*). Plaintiff reiterates her position in the reply memorandum (DN 14 PageID # 857-62).

In response, Defendant asserts that substantial evidence supports the ALJ's RFC determination and conclusion that Plaintiff is not disabled (DN 13 PageID # 840). Defendant contends that the ALJ's well-reasoned decision considered her medical records, the level of treatment, her statements, her activities of daily living, and the medical source opinions, and the ALJ assessed an RFC that accounted for Plaintiff's impairments (*Id.* at PageID # 841). Defendant believes that a fair reading of the ALJ's decision shows he provided a rationale with specific references to the medical and other evidence, including evidence Plaintiff referenced in her brief (*Id.* at PageID # 841-44). Defendant rebuts Plaintiff's assertions that the ALJ's RFC is based on factual mistakes (*Id.* at PageID # 844-45).

**2. *Applicable Law***

The RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946(c). ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC determination ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 416.1520c, 416.1529(a).

The regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[6] in the record, even if it comes from a treating medical source. 20 C.F.R. § 416.920c(a).[7] Instead, ALJs will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(5).[8] Of these five factors, the two most important are supportability and

6 At the initial and reconsideration levels, state agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 416.913a(a)(1). ALJs "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 416.913a(b)(1).

7 The language quoted above indicates that the regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927(c)(2).

8 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 416.920c(c)(3)(i)-(v).

consistency. 20 C.F.R. § 416.920c(a) and (b)(2). Further, the regulation requires ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Notably, under the regulations ALJs "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2).

The regulations provide the following descriptions:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

A claimant's statement that she is experiencing pain and/or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. § 416.929(a). In determining whether a claimant suffers from debilitating pain and/or other symptoms, a two-part test applies that will be discussed below. *See Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

### 3. ***Discussion***

The ALJ explained that in making the RFC findings he considered all alleged symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective

medical evidence and other evidence of record (Tr. 25) (citing 20 C.F.R. § 416.929 and SSR 16-3p). The ALJ also indicated that he considered the medical opinions and prior administrative medical findings of record in accordance with the requirements of 20 C.F.R. § 416.920c (*Id.*).

The ALJ acknowledged that in assessing Plaintiff's symptoms, he must follow a two-part test (Tr. 25). The ALJ noted that the first part of the test requires him to determine whether there are underlying medically determinable physical or mental impairments that could reasonably be expected to produce Plaintiff's pain or other symptoms (*Id.*). The ALJ observed that if the first part is satisfied, the second part requires him to assess the intensity and persistence of the alleged symptoms to ascertain the extent to which the symptoms limit Plaintiff's ability to perform work-related activities (*Id.*). Further, the ALJ noted that when a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the objective medical evidence, he must consider other evidence of record to ascertain whether the claimant's symptoms limit his ability to do work-related activities (*Id.*). The ALJ's description of the two-step process is consistent with applicable law (*Id.*). *See* 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 4790249, at *49464-66 (Oct. 25, 2017); *see also Duncan*, 801 F.2d at 853.

The discussion that follows reads:

> In the claimant's disability report, she alleged an inability to work due to a series of complications arising from her autonomic disorder as well as anxiety disorder (Ex. B1E). In subsequent reports, the claimant described being exercise intolerant, spending most of her days lying down, large variations in her heart rate, chest pain, and being unable to stand for more than 10 minutes at a time (Ex. B5E, B8E, B9E). When the claimant's heart rate spikes, if she does not lie down, she indicated that she will pass out. The claimant also described brain fog due to lack of blood to her head during such episodes. The claimant reported not handling stress well either.

Similar testimony was offered at the April 2025 hearing. The claimant described dizzy spells, fainting, chest pain, and tachycardia and arrhythmias. However, despite the seriousness of the alleged condition, the claimant affirmed that she has not returned to Vanderbilt hospital for additional treatment. She claims that her condition is treatment resistant.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because almost all of the claimant's treatment ends in January 2024 after she was released from Vanderbilt Hospital. All subsequent care was carried out by the claimant's primary care provider with testing remaining within normal limits and the claimant indicating that her anxiety was controlled on medications too. Overall, the degree of her limitations is not supported by the medical evidence.

For example, most of the claimant's care occurred well prior to 2024. In or around October 2023, the claimant endorsed chest pain and palpitations [for] which her cardiologist recommended several interventions, including increased exercise, and which the claimant mostly declined (Ex. B2F/3). Eventually, the claimant's cardiologist, after showing no clear abnormalities during workup, referred the claimant to Vanderbilt's autonomic disorder clinic (Ex. B4F). Otherwise, most treatment was carried out by the claimant's primary care provider, including refills for her anxiety medications (Ex. B1F; B3F; B5F; B6F).

In December 2023, the claimant presented to Vanderbilt Heart specialty clinic for evaluation of her arrhythmias and syncopal episodes. However, the claimant's recent Holter monitor showed an average heart rate of 80 bpm with a range between 40 and 120, normal echocardiogram, and normal stress test (Ex. B7F). After discussion of several conservative measures, changes to the claimant's medications and a ganglion block were advised. And yet, even when treatment options were recommended, the claimant was non-compliant. The claimant was given medications from her cardiologist to regulate her pulse but when her heart rate drops into the 50's she panics (Ex. B11F/21). Yet, as she had been counseled several times, the claimant's heart rate being in this level was not necessarily abnormal.

Thus, in January 2024, consistent with the disability application date, the claimant was indeed hospitalized to manage her autonomic complications (Ex. B10F). In

> January 2024, the claimant had a history of symptomatic sinus tachycardia and dysautonomia and presented for an electrophysiology study in the setting of recurrent tachycardia symptoms associated with presyncope. Throughout the study, the claimant's heart rate was normal and an arrhythmia was not reproducible; she was scheduled for a right stellate ganglion block (Ex. B10F/7-10).
>
> Although the claimant was emotional, treating providers assured her that her heart rate drops were within normal ranges (Ex. B10F/10). The claimant was instructed to follow up with her cardiologist in the next several months and told to avoid lifting more than 10 pounds for the next week (Ex. B10F/12). Additional treatment was not recommended at that time.
>
> Interestingly, after the hospitalization, the claimant continued to manage all of her care with her primary care provider (Ex. B11F, B12F, B14F). She did not return to Vanderbilt autonomic or cardiology specialists and affirmed this at the hearing. The claimant otherwise did not return to any specialist for additional care of her conditions—physical or mental health. Moreover, even when the claimant was under [their] care, she did not follow medication advice (Ex. B11F/21). Thus, in many regards, the medical evidence shows the claimant reported several symptoms, but little objective [support] for disruptive abnormal cardiology or autonomic functioning beyond diagnoses. Again, Holter monitors, heart rate measurements, electrophysiology, echocardiogram, and stress tests had been within normal limits both leading up to and within the disabilty period. A March 2024 lung assessment was also within normal limits (Ex. B12F).
>
> In terms of anxiety, the claimant had been receiving refills from her primary care provider and reported doing well with her Xanax medications (Ex. B14F/6). While the claimant would endorse anxiety, no mental status examinations by a mental health professional had been conducted, as the claimant's treatment was managed by her primary care provider.

(Tr. 25-27).

The frequency that Plaintiff sought treatment for her allegedly disabling conditions is a factor the ALJ may consider in assessing her subjective complaints. 20 C.F.R. § 416.929(c)(3)(v). The medications prescribed to alleviate Plaintiff's alleged symptoms is another factor the ALJ may consider in assessing her subjective complaints. 20 C.F.R. § 416.929(c)(3)(iv). Additionally, inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the evidence in the record is a factor the ALJ may consider in assessing her

subjective complaints. 20 C.F.R. § 416.929(c)(4). In sum, the ALJ found that Plaintiff's testimony and statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical and other evidence in the record. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the degree to which Plaintiff suffers from the pain and other symptoms. Since tolerance of pain and/or other symptoms is a highly individualized matter, the conclusion of the ALJ, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." *Houston v. Sec'y of Health & Hum. Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (citing *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). The ALJ's findings are supported by substantial evidence and fully comport with applicable law. *See* 20 C.F.R. § 416.929.

The ALJ addressed the persuasiveness of the medical opinions and prior administrative medical findings in the record (Tr. 28-29). First, the ALJ addressed an opinion from the consultative psychological examiner, Dr. Kerrick, that Plaintiff had "marked limitations in all of the paragraph B criteria except for no limitations with memory" (Tr. 28).[9] The ALJ found Dr. Kerrick's assessment "unpersuasive" for the following reasons:

> [O]n its face, this assessment is not consistent with Dr. Kerrick's own mental status examination. When Dr. Kerrick examined the claimant, she found no objective evidence of marked limitations carrying out instructions or interacting with others. Rather, in reaching this conclusion, Dr. Kerrick appears to have relied exclusively

9 The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3). The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If the four areas of mental functioning are rated as "none" or "mild," the ALJ will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1).

> on the claimant's subjective reports. While the claimant's subjective statements are to be considered, those statements without more, are insufficient to supported marked limitations. In particular, given the claimant has not received any specialized mental health treatment or hospitalizations but rather she receives routine medication from her primary care provider, along with reporting good response to medications, the degree of these marked restrictions are not objectively supported. Overall, the undersigned finds this opinion contradictory on its face, both in terms of Dr. Kerrick's exam findings and the overall medical evidence.

(*Id.*). The ALJ's persuasiveness assessment is supported by substantial evidence in the record and complies with the regulatory requirement that ALJ explain how he considered the supportability and consistency factors in determining the persuasiveness of Dr. Kerrick's opinion. 20 C.F.R. § 416.920c(b)(2).

Next, the ALJ addressed the assessments from treating sources Drs. Carter and Tandri (*Id.*). The ALJ found their assessments "partially supported by narrative statements and partially consistent with the medical evidence and therefore partially persuasive (Ex. B16F, B17F)" (*Id.*). The ALJ provided the following explanation:

> First, Dr. Carter is the claimant's primary care provider, not a specialist. When he offered his opinion on the claimant not driving, avoiding hazards, and not being around people, it was based on what was otherwise routine treatment from him. Dr. Carter does not know that the claimant's cardiologists offered treatments and medications which the claimant declined. Moreover, even in his assessment, Dr. Carter noted impairments such as back pain which was not a medically determinable impairment and which does not have objective, corresponding clinical signs—only subjective allegations. On the other hand, Dr. Tandri is a specialized treating provider but offered no clear limitations on what the claimant's conditions prevent her from doing. Rather, Dr. Tandri noted that the claimant has problems with activities of daily living and is limited, which remains too vague to provide any meaningful insight into the claimant's functional limitations. As a final matter, both opinions note the claimant's autonomic disorder but the lack of evidence regarding that condition since January 2024 is also striking, as the claimant received no additional treatment for the conditions since that time. In many ways, objective evidence of its severity remains questionable, as the claimant did not pursue additional treatment or workup, and cardiology workup leading up to that period had been relatively within normal limits, even if the diagnoses is not in question. Overall, part of the opinions and diagnoses are supported by the

> medical evidence even if more recent treatment, or lack thereof, suggests the symptoms are not as severe as the claimant alleged.

(*Id.*). The ALJ's persuasiveness assessment is supported by substantial evidence in the record and complies with the regulatory requirement that the ALJ explain how he considered the supportability and consistency factors in determining the persuasiveness of opinions from Drs. Carter and Tandri. 20 C.F.R. § 416.920c(b)(2).

As mentioned above, Plaintiff alleges the ALJ's RFC assessment is based on factual errors such as her being non-compliant with medical advice and she declined a stellate ganglion block (DN 12-1 PageID # 831). But at the hearing Plaintiff confirmed that following her release from Vanderbilt University Medical Center in January 2024, she has not returned for any further treatment by autonomic or cardiac specialists despite Dr. Tandri wanting to see Plaintiff back in a couple of months (*see* Tr. 26, 42-45). Additionally, the record confirms the ALJ's observation that in October 2023, Plaintiff's cardiologist, Dr. Schwender, "recommended several interventions, including increased exercise, and which the claimant mostly declined (Ex. B2F/3)" (*see* Tr. 26, 364). Further, referring to Plaintiff's visit to the Vanderbilt Heart Specialty Clinic in December 2023, the ALJ commented:

> After discussion of several conservative measures, changes to the claimant's medications and a ganglion block were advised. And yet, even when treatment options were recommended, the claimant was non-compliant. The claimant was given medications from her cardiologist to regulate her pulse but when her heart rate drops into the 50's she panics (Ex. B11F/21). Yet, as she had been counseled several times, the claimant's heart rate being in this level was not necessarily abnormal.

(Tr. 26) (citing Ex. B7F, Tr. 612). Substantial evidence supports the ALJ's finding that Plaintiff was non-compliant with medical advice. Equally important, the ALJ did not accuse Plaintiff of declining a stellate ganglion block. On the contrary, the ALJ's discussion of Plaintiff's visit to

Vanderbilt University Medical Center in January 2024, cites the very records that indicate Plaintiff underwent a right stellate ganglion block (*see* Tr. 26, Tr. 645-48). For the reasons set forth in the preceding section and in the paragraphs above, Plaintiff's allegations about the ALJ overlooking evidence showing that she had been diagnosed with depression, bipolar disorder, and obsessive-compulsive disorder are without merit. Moreover, the ALJ's discussion that follows the RFC assessment identifies substantial evidence that supports those findings and more than adequately explains why Plaintiff is capable of performing a range of light work with specific postural, environmental, and psychological limitations. Consequently, there is no merit to Plaintiff's assertion that the RFC assessment is based on factual errors.

## IV. CONCLUSION

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation modified). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. *Id.* After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly follows the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenges.

## V. ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

September 28, 2026

H. Brent Brennenstuhl
United States Magistrate Judge

Copies: Counsel